# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERITAS LIFE INSURANCE CORP., *Plaintiff*, v. WILMINGTON SAVINGS FUND SOCIETY, FSB, as Securities Intermediary, *Defendant*. | C.A. No. 24-cv-00865-WJM-LDW |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Ameritas Life Insurance Corp. ("Ameritas"), by and through its undersigned counsel, hereby files and asserts this First Amended Complaint against Defendant, Wilmington Savings Fund Society, FSB ("WSFS"),[1] as Securities Intermediary, and alleges as follows:

### PARTIES

1. Ameritas is a life insurance company incorporated under the laws of State of Nebraska with its principal place of business in the State of Nebraska. Ameritas is therefore a citizen of the state of Nebraska for purposes of diversity jurisdiction.

2. Defendant, Wilmington Savings Fund Society, FSB, as Securities Intermediary, is a federal savings bank with its main office and its principal place of business located in Delaware. WSFS is therefore not a citizen of Nebraska for purposes of diversity jurisdiction.

### JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. §1332 because there is an amount in controversy in excess of $75,000 exclusive of interest and costs; there is complete

---

[1] This amended pleading is filed pursuant to Fed. R. Civ. P. 15(a)(2).

diversity of citizenship between plaintiff, Ameritas, a citizen of Nebraska, and defendant, WSFS, a citizen of a state(s) other than Nebraska; and there is an actual and ripe controversy between the parties.

4. Venue is proper in this judicial district under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in the District of New Jersey.

## FACTUAL BACKGROUND

### A. Stranger-Originated Life Insurance

5. A secondary market for life insurance has emerged whereby multi-million dollar life insurance policies have been manufactured, on the lives of senior citizen insureds, by and for the benefit of third-party investors who have no family relationship or other affiliation with the insureds. Such policies are commonly known as stranger-originated life insurance ("STOLI") policies.

6. While there are many variations, all STOLI schemes have one objective in common: to give investors with no insurable interest in the life of the insured a financial stake in the death of the insured.

7. For over 100 years, the United States Supreme Court and most states (including New Jersey whose laws control here) have condemned such "wagering policies" as violating public policy because they create a "sinister counter interest" in the early demise of insureds. *See e.g.*, *Grigsby v. Russell,* 222 U.S. 149 (1911); *Warnock v. Davis,* 104 U.S. 775 (1881); *Trenton Mut. Life & Fire Ins. Co. v. Johnson*, 24 N.J.L. 576 (Sup. Ct. 1854).

8. Under New Jersey law, STOLI policies runs afoul of constitutional, statutory, and common law prohibitions against wagering contracts, as well as New Jersey's insurable interest requirement. Specifically, New Jersey's Constitution has prohibited wagering transactions since 1844. *See Nemtin v. Zarin,* 577 F. Supp. 1135, 1137-41 (3d Cir. 1995) (outlining evolution of

New Jersey law). The present New Jersey Constitution, adopted in 1947, prohibits "gambling of any kind" unless authorized (and STOLI is not) by a majority of voters at a special election. N.J. Const., Art. IV, Sec. VII, par. 2. In 1951, the New Jersey Legislature also enacted statutes defining what constitutes a wagering or a "gaming transaction" and confirmed that such transactions are illegal. *See* N.J. Stat. Ann. § 2A:40-1 (declaring "gaming transactions" defined to include any "wagers . . . upon any lot, chance, casualty or unknown or contingent event" to "be unlawful"); § 2A:40-3 (declaring "gaming transactions" in violation of N.J. Stat. Ann. § 2A:40-1 to be "utterly void and of no effect"). New Jersey's public policy against wagering transactions is also furthered by its insurable interest statute. *See* N.J. Stat. Ann. § 17B:24-1.1a.

9. STOLI speculators often attempt to circumvent these laws by carefully constructing their transactions to hide the fact that the policies are not being procured to satisfy legitimate insurance needs, but instead are being procured as impermissible investments. For example, STOLI transactions are often structured such that the policy is owned by an insurance trust in an insured's name with a family member initially named as a beneficiary. However, courts applying New Jersey law, consistent with the majority rule, look beyond the mere form of a STOLI transaction and scrutinize the substance of the transaction to determine whether a transactions constitutes STOLI.

10. In *Sun Life Assur. Co. of Can. v. Wells Fargo Bank,* 238 N.J. 157 (2019) ("*Bergman*"), the New Jersey Supreme Court recently confirmed that, under New Jersey law, "STOLI policies are against public policy and are void *ab initio*, that, is from the beginning." In this regard, the Supreme Court in *Bergman* explained, among other things, that "a life insurance policy procured with the intent to benefit persons without an insurable interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset." As

the New Jersey Supreme Court further explained, (i) "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy"; (ii) "[g]enerally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value"; (iii) in a STOLI arrangement, "[i]t is also common for an insured to buy the policy in the name of a trust and name a 'spouse or other loved one as the trust beneficiary'"; and (iv) "[i]f a third party without an insurable interest procures or causes an insurance policy to be procured in a way that feigns compliance with the insurable interest requirement, the policy is a cover for a wager on the life of another and violates New Jersey's public policy."

11. In *Bergman*, the trial court found that the policy lacked insurable interest, violated public policy, and was void *ab initio*, and this decision was then affirmed on appeal. 2016 WL 5746352 (D.N.J. Sept. 30, 2016), *aff'd* 779 F. App'x 927 (3d Cir. 2019).

B.   **The Application for a $5 Million Life Insurance Policy**

12. In or around March 2008, Union Central Life Insurance Company ("Union Central") (a predecessor entity of Ameritas) received an application on New Jersey forms (the "Application") for a life insurance policy insuring the life of Alexander Bienenstock (the "Insured"). A copy of the Application (with appropriate redactions) is attached as Exhibit "A."

13. The Application sought a $5 million life insurance policy, naming the "Alexander Bienenstock Life Insurance Trust," dated February 20, 2008, (the "Trust") as the "owner" and "beneficiary" of the applied-for policy.

14. The trustee of the Trust was identified as Michael S. Mosberg. Upon information and belief, Mr. Mosberg was a resident of Bergenfield, New Jersey.

15. The Application was signed on March 10, 2008, in Bergenfield, New Jersey, by Mr. Bienenstock as the Insured, by Mr. Mosberg as trustee of the Trust, and by Abraham Leifer as the producer.

16. The Application represented that the Trust would pay the premiums for the policy.

17. The Application represented that Mr. Bienenstock had a "Net Worth" of over $30 million.

18. The Application represented that the purpose for the insurance was "Estate Tax."

19. In connection with the Application, Mr. Mosberg, on behalf of the Trust as owner, and Mr. Leifer as the producing broker, executed a "Statement of Policyowner and Agent Intent" on or about March 10, 2008.

20. By signing the Questionnaire, Mr. Mosberg and Mr. Leifer represented that (i) they did not intend to assign or sell the applied-for life insurance policy; (ii) they had not spoken to any individual or company offering to pay for the insurance or offering "free" or "no cost" insurance; (iii) they did not complete or anticipate to complete any loan papers in connection with the purchase of the policy; (iv) the premiums were not being otherwise financed; (v) they had never sold a life insurance policy they owned to a third party.

21. On or about April 1, 2008, a letter was submitted to Union Central from Mr. Mosberg at his address in Bergenfield, New Jersey. This letter stated that the Insured had a total net worth of over $30 million comprised primarily of real estate investments. The letter further advised that the Insured should purchase life insurance "to protect his estate."

22. In reliance upon the aforementioned materials and other supporting documents and information submitted to Union Central in connection with the Application, Union Central issued a policy on New Jersey forms with a $5 million death benefit (policy number U000042887) (the

"Policy") with an issuance date of April 25, 2008, insuring the life of Mr. Bienenstock with the Trust as owner and beneficiary.

23. On or about April 29, 2008, the initial premium for the Policy was paid to Union Central via a check in the amount of $218,400. The check was drawn on an account for "Alexander Bienenstock LIT."

24. On or about May 1, 2008, Mr. Bienenstock as Insured; Mr. Mosberg on behalf of the applicant, the Trust; and Mr. Leifer as witness executed an Amendment of Application for Life Insurance in Bergenfield, New Jersey, representing that the total amount of life insurance to be placed on Mr. Bienenstock's life is $15,000,000.

25. On or about May 1, 2008, Mr. Mosberg on behalf of the Trust as policy owner and executed the Policy Delivery Receipt. Upon information and belief, the Delivery Receipt was executed by Mr. Mosberg in New Jersey.

26. On or about June 9, 2011, the Trust changed the owner and beneficiary of the Policy to WSFS, as Securities Intermediary, which is the current owner of record.

27. The Insured died on January 12, 2024.

**C.    The Human Life Wager and Materially False Representations**

28. Upon receipt of the claim, Ameritas conducted an investigation of the Policy and claim.

29. Upon information and belief, the initial premiums paid for the Policy were not funded by the insured or any other person with an insurable interest in Mr. Bienenstock's life, and instead, the premiums were funded by a group of investors who lacked an insurable interest in Mr. Bienenstock's life, who were participating in a wager on his life so that they might profit (either by selling the Policy on the secondary market after two years or collecting the death benefit).

30. Upon information and belief, in furtherance of this human life wager, the Application and other documents (described above) in support of the Application contained materially false information which was intended to induce, and which did induce, Union Central to issue the Policy. Upon information and belief, there were materially false representations made regarding, among other things, (i) the lack of intent to sell the Policy; (ii) the lack of any premium financing; (iii) that the Trust would be the source of premium payments; and (iv) the Insured's finances and net worth.

31. Union Central relied upon the accuracy of the information provided in the aforementioned and supporting documents and never would have issued the Policy had it known the truth.

## COUNT I

## DECLARATORY JUDGMENT - ILLEGAL HUMAN LIFE WAGERING CONTRACT

32. Ameritas hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

33. The Policy, which was applied for, issued, and delivered to the Trust in New Jersey, is governed by New Jersey law.

34. As set forth above, New Jersey has constitutional, statutory, and common law prohibitions against human life wagers, and the New Jersey Supreme Court in *Bergman* ruled that STOLI transactions are illegal and void *ab initio* under New Jersey law.

35. Upon information and belief, the Policy was, from the outset, intended as a wager on Mr. Bienenstock's life by stranger investors who were hoping to cash in on the Policy by either selling the Policy for a profit on the investor market or collecting the death benefit upon Mr. Bienenstock's death.

36. Upon information and belief, the Policy is an illegal human life wager under New Jersey law because the Policy was taken out with the intent to benefit stranger investors lacking an insurable interest in the insured's life and because stranger investors procured the Policy and funded the initial premium on the Policy. *See Bergman*, 238 N.J. 157 (New Jersey Supreme Court holding that "a life insurance policy procured with the intent to benefit persons without an insurable interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset."); *id.* (explaining that (i) "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy"; and (ii) "[g]enerally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value").

37. Accordingly, Ameritas seeks, and is entitled to, a declaratory judgment declaring that the Policy is illegal and a void *ab initio* human life wager under New Jersey law.

## COUNT II

### DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

38. Ameritas hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

39. Upon information and belief, although the transaction was structured to attempt to feign technical compliance with New Jersey's insurable interest statute, N.J. Stat. Ann. § 17B:24-1.1a, by establishing the Trust in the insured's name as the initial owner of the Policy, the Policy lacks an insurable interest and is void *ab initio* because the Policy was taken out with the intent to benefit stranger investors lacking an insurable interest in the insured's life and stranger investors procured the Policy and funded the initial premium on the Policy. *See Bergman*, 238 N.J. 157

(New Jersey Supreme Court holding that "a life insurance policy procured with the intent to benefit persons without an insurable interest in the life of the insured does violate the public policy of New Jersey, and such a policy is void at the outset."); *id.* (explaining that (i) "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy"; (ii) "[g]enerally, an investor funds a STOLI policy from the outset, which makes it possible to obtain a policy with a high face value"; (iii) in a STOLI arrangement, "[i]t is also common for an insured to buy the policy in the name of a trust and name a 'spouse or other loved one as the trust beneficiary'"; and (iv) "[i]f a third party without an insurable interest procures or causes to an insurance policy to be procured in a way that feigns compliance with the insurable interest requirement, the policy is a cover for a wager on the life of another and violates New Jersey's public policy.").

40. Accordingly, Ameritas seeks, and is entitled to, a declaratory judgment declaring that the Policy lacks an insurable interest and is void *ab initio* under New Jersey law.

## PRAYER FOR RELIEF

WHEREFORE, Ameritas respectfully requests the entry of an Order by this Court as follows:

    A.    Declaring that the Policy is void *ab initio*;

    B.    Awarding Ameritas attorneys' fees and costs associated with seeking this judgment, as determined by the Court; and

    C.    Awarding Ameritas such further relief as this Court deems appropriate.

Dated: March 25, 2024                    COZEN O'CONNOR, P.C.

*/s/ Duncan R. Becker*
Philip J. Farinella, Esq. (239742017)
Michael J. Miller, Esq. (032821991)
Joseph M. Kelleher, Esq. (040602009)
Duncan R. Becker, Esq. (365102021)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
pfarinella@cozen.com
mjmiller@cozen.com
Jkelleher@cozen.com
Dbecker@cozen.com

*Attorneys for Plaintiff, Ameritas Life Insurance Corp.*

- 10 -